Borough of Rochester and Westmoreland Casualty Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and John L. Beighey, Respondents.

Argued December 5, 1979, before Judges WILKIN-SON, JR., BLATT and CRAIG, sitting as a panel of three.

*Fred Trenor,* with him *Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioner.

*Ronald Ganassi,* with him *Will & Keisling, Eugene F. Scanlon, Jr., Dickie, McCamey & Chilcote,* for appellees.

OPINION BY JUDGE WILKINSON, JR., January 10, 1980:

Respondent (claimant) was awarded compensation by a referee and the Workmen's Compensation Appeal Board (Board) under The Pennsylvania Workmen's Compensation Act (Act)[1] for total disability resulting from a work-related coronary incident. Essentially, the present appeal involves a dispute between Great American Insurance Company (Great American), the insurance carrier for the Borough of Rochester (Borough) on December 9, 1975, and Westmoreland

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 *et seq.*

Casualty Company (Westmoreland Casualty), the insurance carrier for the Borough on April 5, 1977 and a petitioner here.

Claimant was the police chief for the Borough. On December 9, 1975 claimant, investigating a bank robbery while in the course of his employment, experienced severe chest pain and profuse perspiration. From December 9, 1975 to December 22, 1975 claimant was a patient at Rochester Hospital. His treating physicians diagnosed his case as an acute inferior myocardial infarction. Great American, then the Borough's insurance carrier, paid claimant compensation for the period of disability running from December 9, 1975 to September 20, 1976, when claimant resumed his duties as police chief. Since claimant returned to work at wages equal to or greater than his pre-injury wages, he executed a final receipt on September 29, 1976.

Following his return to work, claimant continued under the care of his physicians and took daily medication for his angina. On April 5, 1977, in the course of investigating a house burglary, claimant experienced sharp chest pains and dizziness after having followed some footprints, climbed the fence, descended into and inspected the basement of an adjacent house, and ascended the steps. Claimant returned to the Borough Building and was taken to Rochester Hospital. The next day he was transferred to Allegheny General Hospital and subsequently underwent heart catheterization, which revealed substantial blockage of claimant's coronary arteries. April 5, 1977 was claimant's last day of work.

In August 1977 claimant filed a Petition to Set Aside Final Receipt against the Borough and Great American and filed a Claim Petition against the Borough and Westmoreland Casualty. All of the examining physicians agreed that the claimant is totally and permanently disabled from performing his work as

a law enforcement officer or any other occupation involving other than light non-stressful sedentary work. The referee set aside the Final Receipt executed by the claimant; suspended compensation payable by Great American as of September 20, 1976; found that the cardiac incident of April 5, 1977, was the precipitating event for claimant's total disability and was distinct from the 1975 injury; and ordered an award under the Claim Petition. The Board affirmed the referee's order, and the Borough and Westmoreland Casualty appealed to this Court.

The issue before us is whether there was substantial competent evidence for the referee's finding that the claimant suffered a new injury[2] on April 5, 1977, rather than a manifestation of pre-existing conditions.

Westmoreland Casualty emphasizes the testimony of both of claimant's treating physicians to the effect that claimant regularly suffered chest pains, that the frequency of the chest pains was increasing prior to the 1977 incident, and that there was no damage to the heart as a result of the 1977 incident. Further, one of those physicians testified that angina is a progressive disease.

However, the two physicians pointedly testified that the chest pains claimant suffered as a result of the events of April 5, 1977, were more severe and persistent than the chest pains claimant had previously experienced. One of the physicians further added that

---

[2] We are not impressed with Westmoreland Casualty's argument that the referee did not make a specific finding that claimant's "occurrence" on April 5, 1977 was an "injury". It is clear from even a casual reading of the exceptionally detailed 29 findings of fact that the referee found both the occurrences of December 9, 1975 and April 5, 1977 to be injuries. Any doubt on this point is removed by the referee's third conclusion of law which reads: "The claimant sustained injuries on April 5, 1977 within the meaning of Section 301(c), (1) of the Act, as amended October 17, 1972."

the events of April 5, 1977, precipitated claimant's chest pains, that the cardiac incidents of 1975 and 1977 were two separate episodes, and that the 1977 incident "represented a significant change in [claimant's] course." This testimony was supported by the deposition of a third physician, a specialist in internal medicine and cardiovascular diseases who examined claimant in March and May of 1978, who testified that the claimant's physical efforts on April 5, 1977 precipitated a new myocardial event, that it was different from claimant's usual chest discomfort and required new and different treatment, and that the myocardial event of 1975 was in no way responsible for the myocardial event in 1977. The referee as a fact finder not only resolves questions of credibility and makes choices between conflicting evidence; he also may, in lawful exercise of his broad discretion, accept or reject the testimony of any witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board*, 40 Pa. Commonwealth Ct. 633, 398 A.2d 234 (1979). When, as here, the testimony accepted constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, we are precluded from disturbing findings supported by the testimony.

Accordingly, we will enter the following

ORDER

AND Now, January 10, 1980, the order of the Workmen's Compensation Appeal Board, Docket No. A-75795, dated March 1, 1979, is affirmed. It is ordered that judgment be entered in favor of claimant John L. Beighey and against the Borough of Rochester and/or its insurance carrier, Westmoreland Casualty Company, in the amount of $181.06 per week beginning on April 6, 1977 and continuing so long as the

disability lasts, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

The Borough of Rochester and/or its insurance carrier, Westmoreland Casualty Company, is directed to reimburse the claimant for reasonable costs of medical expense incurred in the total amount of $396.61. The Borough of Rochester and/or its insurance carrier, Westmoreland Casualty Company, is directed to pay subrogated medical costs to Blue Cross in the total amount of $5,450.95. The check in said amount shall be sent to Ronald Ganassi, claimant's attorney, for proper distribution.

In addition, the Borough of Rochester and/or its insurance carrier, Westmoreland Casualty Company, is directed to reimburse Ronald Ganassi, claimant's attorney, for reasonable costs of prosecution incurred in the total amount of $718.15. Reasonable attorney fees in the amount of $4,004.00 are approved, and the Borough of Rochester and/or its insurance carrier Westmoreland Casualty Company is further directed to deduct $38.50 from each week of compensation that becomes due and payable to the claimant during the period from April 6, 1977 through April 3, 1979, inclusive, and to forward it together with the aforementioned costs of $718.15 directly to Ronald Ganassi, claimant's attorney. All remaining payments of compensation, interest and the aforementioned costs of $396.61 shall be paid directly to John J. Beighey.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.

PER CURIAM ORDER

AND NOW, May 22, 1980, after reargument before the Court en Banc, we have no reason to modify or change the opinion and order in the above case filed January 10, 1980.